IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VELESA DRAUGHN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-21-3134 |
| CHRISTINE WORMUTH, | * | |
| Defendant. | * | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Christine Wormuth's Motion to Dismiss (ECF No. 36). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant the Motion.

### I.   BACKGROUND

**A.   Factual Background**[1]

Self-represented Plaintiff Velesa Draughn is a self-identified African American woman over forty years old who suffers from depression and lymphedema. (Am. Compl. ¶ 15, ECF No. 28). She alleges that while she worked for the United States Army and the United States Cyber Command ("ARCYBER" or "the Army") as a human resources specialist in Fort Meade, her supervisors subjected her to a hostile work environment,

---

[1] Unless otherwise noted, the Court takes the following facts from the Amended Complaint (ECF No. 28) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

retaliation, failure to accommodate her disability, and discrimination on the basis of her race, color, sex, age, and national origin. (Id. ¶¶ 15–16, 23). Defendant Wormuth is the Secretary of the Army. (Id. at 1).

The Army hired Draughn on June 17, 2012. (Id. ¶ 23). Her grade was a GS-13 at the time. (Id.) Snookie R. Senires, a white woman at GS-15, supervised Draughn, and allegedly "treated her differently from similarly situated employees." (Id. ¶ 24). For example, in July 2012, she ordered Draughn to perform GS-15 level duties that should have been Senires' responsibility. (Id. ¶ 16). Further, Senires requested that the Army reassign Draughn to a supervisory position at GS-13 so that Draughn would have to complete supervisory work above her grade for no additional compensation. (See id. ¶¶ 32–33).

Senires and her supervisors, including Colonel David A. Hater, a white man, refused to provide performance standards or to evaluate Draughn as ARCYBER policy required. (Id. ¶¶ 35–36). Senires wrongfully accused Draughn of "holding up the [evaluation] process." (Id. ¶ 31). Draughn alleges that she was the only ARCYBER employee without performance standards or a review for 2012 and 2013. (Id. ¶ 37).

Draughn made an unspecified "initial complaint" to Colonel James Stanford at some point before February 2013, and she began to "suffer retaliation and retribution" from Senires thereafter. (Id. ¶ 39). She was required to travel to Fort Belvoir in Virginia in her personal vehicle, and her supervisors did not ensure that she could access the facility in advance. (Id. ¶ 40). On March 1, 2013, Senires also made Draughn change her furlough day in violation of an ARCYBER directive. (Id. ¶ 41).

On June 1, 2013, Draughn "became the target of [] Senires['] and [] Hater's animus and the workplace grew increasingly hostile." (Id. ¶ 43). In a meeting, Hater looked at Draughn when he referred to a previous workplace conflict where he had to "put [an employee] in her place." (Id. ¶ 45). Draughn was humiliated and felt that her reputation had been damaged. (Id. ¶ 46).

On August 19, 2013, Hater and Senires harassed Draughn regarding her meeting with a management employee relations specialist. (Id. ¶ 50). On August 21, 2013, an ARCYBER commander gave Draughn a Special Commander's Coin and a Certificate of Appreciation for her support of a furlough. (Id. ¶ 51).

On September 17, 2013, Draughn met with ARCYBER's Chief of Staff, Scott Sanborn, to inform him of the alleged harassment and retaliation. (Id. ¶ 48). Senires and Hater then "bullied and harassed" Draughn on September 19, 2013, when they told her to complete a task usually assigned to Senires. (Id. ¶ 49). Further, on September 24, 2013, Senires prevented Draughn from hiring a subordinate employee, allegedly in retaliation and to later justify removing Draughn's supervisory responsibilities. (Id. ¶ 52). On October 1, 2013, Draughn had to report for work during the government shutdown as a non-exempted employee. (Id. ¶ 53). On October 10, 2013, Hater informed Draughn that if she and Senires did not "come to a resolution[,] it would not be good for either of them." (Id. ¶ 55).

On January 16, 2014, Draughn filed her first EEO complaint based on alleged harassment and retaliation. (Id. ¶ 58). On January 27, 2014, Hater told her that "if she or [] Senires [didn't] get it together, one of them would be fired." (Id. ¶ 59). On February 2,

3

2014, Draughn found mouse droppings on her desk, and she concluded that a colleague put them there to retaliate against her for her complaint. (Id. ¶ 60). On February 3, 2014, Fort Meade opened late, and Draughn was the only employee not informed. (Id. ¶ 61).

On February 18, 2014, Draughn submitted a whistleblower complaint to the Office of Special Counsel. (Id. ¶ 64). On February 19 or 20, 2014, Hater and Senires announced that an information breach had occurred, and they framed Draughn for it. (Id. ¶ 65). Senires and Hater confiscated Draughn's keys to the civilian personnel filing cabinet, which was Draughn's responsibility, and Draughn felt humiliated by "having to sign out the key to her own file cabinet located in her office" thereafter. (Id. ¶¶ 68–69).

In May 2014, Army supervisors excluded Draughn from meetings and reassigned unspecified responsibilities to other employees. (Id. ¶ 71). On May 29, 2014, she complained to a supervisor about retaliation, and he referred her to the EEO process. (Id. ¶ 72). She participated in an EEO fact finding conference with Hater, Senires, and ARCYBER counsel, Laurie Kwiedorowicz, who wrongfully told Draughn that other employees had made EEO complaints about her. (Id. ¶¶ 73–74).

On August 11, 2014, Senires gave Draughn an unfair performance rating. (Id. ¶ 76). On August 21, 2014, Hater placed mouse droppings on Draughn's desk after she expressed concerns over the rating. (Id. ¶ 78). On November 3, 2014, Hater and Senires redeveloped Draughn's position description to remove her supervisory duties. (Id. ¶ 82). Later in November, they issued unrealistic performance standards that were inconsistent with Draughn's responsibilities. (Id. ¶ 83). They also generally subjected her to "greater scrutiny" and did not respond to her requests to attending training courses. (Id. ¶¶ 84, 86).

On December 12, 2014, they denied her request for holiday leave, and in January 2015, they harassed her to complete a task usually assigned to Senires. (Id. ¶¶ 87–88). On January 22, 2015, Hater and Senires changed the leave policy to prevent Draughn from taking leave without pay and to force her to take advanced sick leave. (Id. ¶ 89). On January 28, 2015, Hater and Senires did not authorize Draughn's subordinate, Nina Holley, for a grade increase in retaliation for Holley's testimony during the investigation of Draughn's EEO complaint. (Id. ¶ 90).

On February 5, 2015, Senires issued Draughn a Notice of Warning for Unacceptable Performance, and she issued a Proposed Plan to Improve Performance ("PIP") the next day. (Id. ¶¶ 91–92). Senires denied Draughn's request to have a third party present during meetings with Senires and Hater. (Id. ¶ 96).

On March 6, 2015, Draughn filed a disability discrimination complaint with the EEO Office, and she requested the reasonable accommodation of working at home on March 9, 2015. (Id. ¶¶ 97–98). Draughn alleges that Senires granted Carl Accetta, a "White/Hispanic" man, an accommodation to work from home in February 2015, initially without medical documentation and he later provided appropriate medical documentation. (Id. ¶ 128). Senires herself was also allowed to work from home when Draughn was not. (Id.).

On April 13, 2015, Senires issued a Letter of Counseling. (Id. ¶ 100). Around that same time, Draughn contacted ARCYBER leadership again about retaliation. (Id. ¶ 101). On May 14, 2015, Hater yelled at her and accused her of being disruptive. (Id. ¶ 105). On

October 12, 2015, Senires removed Draughn's supervisory duties, (id. ¶ 108), and the duties were officially reassigned on January 31, 2016. (Id. ¶ 112).

Draughn alleges that she performed satisfactory work at all times and that she had received a within-grade raise that she would not have been entitled to if she had failed at the essential functions of her position. (Id. ¶ 103). Further, she alleges that her supervisor's conduct, specifically Senires, Hater, Stanford, Sanborn, and Kenneth Rector's conduct, was severe and pervasive, such that she developed depression and her lymphedema worsened. (Am. Compl. ¶ 117).

**B.     Procedural History**

The exact history of her administrative filings is unclear. Draughn has filed at least six formal EEO complaints related to these events, as well as other informal complaints and two federal lawsuits. First, on November 17, 2016, she filed ARMEADE16SEP03754 ("EEO 3754"), which alleged discrimination. (Id. ¶ 1). On September 17, 2020, she received her first right to sue letter for the complaint. (Id.).

The following three EEO Complaints are the subject of the instant lawsuit: ARMEADE14JAN00178 ("EEO 0178"), (ECF Nos. 36-2–36-6),[2] which was later

---

[2] Ordinarily, a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several exceptions, including documents attached to the complaint and motion to dismiss, so long as they are integral to the complaint and authentic. See Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). A court may also consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001); accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994).

consolidated into ARMEADE15FEB00563 ("EEO 0563"), (ECF No. 36-7), and ARMEADE16MAR01135 ("EEO 1135"), (ECF Nos. 36-8, 36-9). EEO 0178 and 0563 allege discrimination and retaliation, respectively, through a hostile work environment theory. EEO 1135 also alleges discrimination and retaliation. On September 9, 2021, the EEO office issued its final agency decision on all three complaints, and it granted summary judgment to the Army. (ECF No. 36-11).

Draughn filed her first lawsuit, Draughn v. McCarthy, ("Draughn I"), No. RDB-20-cv-3625 (D.Md), on December 15, 2020, after receiving a right to sue letter for EEO 3754. (Draughn I, Compl. at 1, ECF No. 1). She sued Ryan McCarthy, who was Secretary of the Army at the time. (Id.). She alleged discrimination on the basis of race, color, sex, national origin, age, and disability under Title VII and the Americans with Disabilities Act ("ADA"), as well as retaliation and failure to accommodate. (Id. at 4). She also asserted a claim for violation of the Family and Medical Leave Act of 1993 ("FMLA"). (Id.). These claims arose out of Draughn's experience at ARCYBER from January 2014 through June 2017. (Draughn I, Statement of Facts at 1–5, ECF No. 1-1). She alleged that ARCYBER supervisors, including Hater and Senires, violated her rights by discriminating against her, retaliating after EEO activity, and refusing to allow her to work from home to

---

Here, documents from the administrative record are attached to the Amended Complaint and the Motion to Dismiss. Additionally, Draughn referred to her EEO charges the Complaint, and there is no dispute that documents relating to the administrative record are integral to his case and authentic. See White v. Mortg. Dynamics, Inc., 528 F.Supp.2d 576, 579 (D.Md. 2007) (finding that documents from the administrative record were integral to plaintiff's complaint). Accordingly, the Court will consider these documents in its analysis.

accommodate her depression, anxiety, and bilateral lymphedema. (Id.). Specifically, Hater treated her with hostility, and ARCYBER removed her supervisory duties and gave her unfair performance reviews. (Id.).

The Court dismissed her complaint with prejudice on December 1, 2021. (Draughn I, ECF No. 20). The Court held that it lacked subject matter jurisdiction over the FMLA claim because federal employees cannot sue under the FMLA. (Draughn I, Mem. Op. at 8, ECF No. 19). As to her discrimination and retaliation claims, these were dismissed for failure to exhaust, untimeliness, or failure to state a claim. (Id. at 8–12, 14–18). The failure to accommodate claim was dismissed because Draughn failed to plead any facts to show that ARCYBER's proposed alternative accommodation (relocation to a different Army base) was unreasonable. (Id. at 14).

Draughn filed the instant case ("Draughn II") against Wormuth on December 9, 2021, just eight days after the Court dismissed Draughn I. (ECF No. 1). She filed an Amended Complaint on February 13, 2023. (ECF No. 28). In the Amended Complaint, Draughn makes five claims, the first three of which overlap: retaliation and a hostile work environment based on race, color, sex, and disability under Title VII (Count I); discrimination based on a theory of disparate treatment, as well as retaliation under Title VII (Count II); retaliation under Title VII (Count III); negligent supervision (Count IV); and failure to accommodate disability under Title VII and the Rehabilitation Act (Count V). (Am. Compl. ¶¶ 114–152). She seeks damages, including emotional damages. (Id. ¶ 124).

On July 10, 2023, Wormuth filed her Motion to Dismiss. (ECF No. 36). Draughn filed an Opposition on August 9, 2023, (ECF No. 42), and Wormuth filed a Reply on February 8, 2024, (ECF No. 57).

## II.     DISCUSSION

### A.     Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Complaints drafted by self-represented plaintiffs are held to a less stringent standard than those drafted by attorneys, and courts must liberally construe these complaints. See Johnson v. Silver, 742 F.2d 823, 825 (4th Cir. 1984). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**C.   Analysis**

   **1.   Claim Preclusion**

Wormuth argues that Counts I–III (discrimination, retaliation, hostile work environment, and failure to accommodate) and Count V (failure to accommodate disability) should be dismissed under the doctrine of res judicata. (Mem. L. Supp. Mot. Dismiss ["Mot."] at 15, ECF No. 36-1; Reply at 5–9, ECF No. 57).[3] Draughn responds that res judicata is not applicable because: (1) some of her EEO complaints were pending when she filed the Draughn I complaint, and thus those claims could not have been included in that suit; (2) the instant claims are factually distinct because they refer to different events and different supervisors; (3) res judicata does not apply to continuing wrongs. (Opp'n

---

[3] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

10

Mot. Dismiss ["Opp'n"] at 3–6, 23, ECF No. 42). At bottom, the Court finds that Counts I–III and V are barred by res judicata.

"Under the doctrine of res judicata, or claim preclusion, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Pueschel v. U.S., 369 F.3d 345, 354 (4th Cir. 2004) (citation omitted). The doctrine "protects litigants from vexatious litigation, conserves judicial resources, promotes efficiency, and minimizes the risk of inconsistent judgments." Panghat v. Balt. Veterans Affs. Med. Ctr., No. ELH-19-994, 2019 WL 7281952, at *12 (D.Md. Dec. 27, 2019). The elements of res judicata are: (1) the parties in the two suits are the same or in privity with the parties in the prior suit; (2) the claims presented in the second action are identical to those determined, or those which could have been raised, in the prior litigation; and (3) a final judgment on the merits. Jerry v. Allstate Ins. Co., 553 F.Supp.3d 287, 292 (D.Md. 2021).

All three elements are satisfied here as to Draughn's claims for discrimination, retaliation, hostile work environment, and failure to accommodate. First, the parties were the same in Draughn I because both suits are against the Secretary of the Army at the time the respective complaints were filed, and thus the defendant is effectively the Army itself. Andrews v. Daw, 201 F.3d 521, 525 (4th Cir. 2000) (explaining that "the real party in interest in an official-capacity suit is the entity"). The third element is also clearly satisfied because the Court decided Draughn I on the merits.

Only the second element is in dispute, and the Court finds that it has been met because Draughn's claims in Counts I–III and V were determined, or could have been

11

raised, in Draughn I. The Fourth Circuit has explained that "the appropriate inquiry to determine whether causes of action are identical for claim preclusion purposes is whether the claim presented in the new litigation 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.'" Pittston Co. v. U.S., 199 F.3d 694, 704 (4th Cir. 1999) (citation omitted). In other words, causes of action are identical when they arise from a "common nucleus of operative facts." Id.

Here, Draughn's claims in Counts I–III and V arise from the same transactions as the clams in Draughn I. Both lawsuits describe discrimination, retaliation, a hostile work environment, and a failure to accommodate while Draughn was employed at ARCYBER in the same time period. Draughn makes the following arguments to avoid the preclusion of her claims: (1) some of her EEO complaints were pending when she filed the Draughn I complaint, and thus those claims could not have been included in that suit; (2) the instant claims are factually distinct because they refer to different events and different supervisors; (3) res judicata does not apply to continuing wrongs. (Opp'n at 3, 6, 23).

First, while Draughn is correct that the EEO office had not yet issued a final decision on EEO 0178, EEO 0563, or EEO 1135, when she filed the Draughn I complaint on December 15, 2020, she could have included claims based on those charges in Draughn I. This is because a final agency decision is not necessary prior to filing suit; if a charge has been pending for more than 180 days without a decision, a claimant may file a lawsuit. See 29 C.F.R. §§ 1614.108(f), 1614.407. Draughn filed EEO 0178 on March 25, 2014, (Final Agency Decision at 2, ECF No. 36-11), EEO 0563 on February 13, 2015, (Mot. at 8; see also EEO 0563 at 7, ECF No. 36-7), and EEO 1135 on May 23, 2016, (Final Agency

Decision at 6). Thus, the charges were pending for more than 180 days prior to filing Draughn I, and she could have included claims based on those charges in her prior lawsuit.

Second, Draughn's argument that the lawsuits are factually distinct is unconvincing. While the instant suit contains more factual detail and focuses more narrowly on Senires' and Hater's conduct, rather than the actions of other supervisors, the claims are nearly identical and clearly arise out of the same nucleus of operative facts. They both allege discrimination, retaliation, and a hostile work environment in the same time period by ARCYBER supervisors, as well as failure to accommodate. Many details and allegations are identical, including the alleged retaliatory removal of Draughn's supervisory duties, and Senires' denial of Draughn's request for accommodation to work from home. Consequently, it is immaterial that Draughn chose to include more details in Draughn II, because it is clear that she could have included those factual allegations and claims in Draughn I.

As to Draughn's third argument, she cites no authority to support her position that res judicata cannot apply to "ongoing" hostile work environment claims. The instant suit does not contain any allegations after 2016, and Draughn I covered her employment at ARCYBER through 2017. Accordingly, Draughn's assertion that res judicata cannot apply

13

because her supervisors continuously violated the law is unavailing because she does not plead claims or allegations that she could not have raised in her prior suit.

In sum, all elements of res judicata have been met and the Counts I–III and V will be dismissed. The Court need not address Wormuth's other arguments regarding these claims.

### 2. CSRA Preemption

In Count IV, Draughn makes a tort claim for negligent supervision, alleging that ARCYBER leadership failed to adequately supervise Hater and Senires. (Compl. ¶¶ 142–47). Wormuth argues that this claim must be dismissed because it is preempted by the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1101 et seq. (Mot. at 30). Draughn does not respond to this argument and has therefore abandoned her claim. See Ferdinand-Davenport v. Child.'s Guild, 742 F.Supp.2d 772, 777 (D.Md. 2010) (plaintiff abandoned her discriminatory discharge claim when she failed to respond to defendant's argument in her opposition to the motion to dismiss).

The Court also finds Wormuth's preemption argument to be meritorious. The "CSRA constitutes the exclusive remedy for claims arising out of federal employment." Hall v. Clinton, 235 F.3d 202, 203 (4th Cir. 2000). It establishes a framework that "prescribes in great detail the protections and remedies applicable to such action[s], including the availability of administrative and judicial review." Zachariasiewicz v. U.S. Dep't of Just., 48 F.4th 237, 242 (4th Cir. 2022) (quoting U.S. v. Fausto, 484 U.S. 439, 443 (1988)). A federal employee challenging her employer's actions must follow the statute's scheme, which in this case would require filing an EEO complaint and appealing the final

14

agency decision directly to either a United States district court or the EEOC. Eastridge v. Brost, No. TDC-18-3770, 2019 WL 2124895, at *3 (D.Md. May 15, 2019) (citing 29 C.F.R. §§ 1614.401(a)).

In the instant case, Draughn alleges that ARCYBER leadership failed to supervise Hater and Senires, and that they ignored Draughn's complaints of retaliation and discrimination. (Am. Compl. ¶ 144). Her claim clearly challenges the Army's actions, and thus it falls in the scope of the CSRA and is preempted. Draughn has failed to show that negligent supervision claim was brought under the CSRA as an appeal of a final agency decision, and thus her claim must be dismissed. See Eastridge, 2019 WL 2124895, at *3 (dismissing tort claim due to CSRA preemption when the claim was premised on actions taken by the federal government employer).

### III.   CONCLUSION

For the foregoing reasons, the Court will grant the Motion to Dismiss, (ECF No. 36), and dismiss the Amended Complaint, (ECF No. 28). A separate Order follows.

Entered this 11th day of March, 2024.

/s/<br>
George L. Russell, III<br>
United States District Judge